UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STARR INDEMNITY & LIABILITY COMPANY,

Plaintiff,

-against-

AMERICAN CLAIMS MANAGEMENT, INC.,
SUPERIOR RECOVERY SERVICES, INC.,
MARQUEE MANAGED CARE SOLUTIONS, INC.,
and PACIFIC CLAIMS SERVICES, INC.,

Defendants.

Case No. 14 Civ. 0463 (JMF)

**MEMORANDUM OF LAW REGARDING CHOICE OF LAW**

James F. Rittinger
Glenn C. Edwards
Justin E. Klein
Jennifer Philbrick McArdle
Satterlee Stephens Burke & Burke LLP
230 Park Avenue, Suite 1130
New York, New York 10169
Tel: (212) 818-9200
Fax: (212) 818-9606

2191924_1

Pursuant to the Court's request for supplemental briefing, defendants respectfully submit this memorandum of law with respect to the appropriate law governing the availability of punitive damages in the tort claims pursued by plaintiff.  As detailed below, defendants contend that New York clearly has the greatest interest in determining whether punitive damages are available given the parties' choice of New York law to govern the contract from which the tort claims arise, and given that it is alleged that defendants directed their purportedly harmful conduct to plaintiff, a New York citizen.  And under New York law, plaintiff cannot make a claim for punitive damages because it cannot establish "conduct directed at the public."[1]

## I.    UNDER NEW YORK'S CHOICE OF LAW RULES, NEW YORK LAW APPLIES TO THE QUESTION OF WHETHER, AND TO WHAT EXTENT, PUNITIVE DAMAGES ARE AVAILABLE IN THIS CASE

### A.    New York Has the Greatest Interest in Protecting the Contracting Parties from Frustration of Their Contract Rights

In its May 7 Opinion ("May 7 Op."), the Court suggested that under New York choice of law principles, the availability of punitive damages turns on the tort standard of "which state has a greater interest," and further that "because punitive damages are conduct-regulating," the place of the tort would govern.  May 7 Op. at 5.  While some federal courts have so held, the New York Court of Appeals has taken a different view.

In *James v. Powell*, 19 N.Y.2d 249 (1967), the Court of Appeals was confronted with a claim that a New York judgment debtor (Powell) had fraudulently transferred property located in Puerto Rico in order to evade execution.  *See id.* at 254-55.  The court held, first, that liability – whether the property was subject to execution, whether Powell's transfer was fraudulent, and

---

[1] Although plaintiff did not plead any public-directed harm, at the May 5 conference it suggested that such harm could be shown because defendants' conduct would result in "increased rates" for policyholders.  Even if this could constitute the requisite "gross and wanton fraud upon the public," *TVT Records*, 412 F.3d 82, 95 (2d Cir. 2005) – which it does not – the simple fact is that, by plaintiff's own theory, defendants' misconduct took place *because* the insurance programs had been put into runoff, and thus there would be no future premiums to affect.

1

what remedy was available – had to be determined under the law of Puerto Rico, as the location of the property.  *See id.* at 256-59.  However, as to punitive damages the court stated,

> Although it is clear that the measurement of compensatory damages is determined by the same law under which the cause of action arises, this is not necessarily true with regard to exemplary damages. An award of compensatory damages depends upon the existence of wrongdoing—in this case, an issue for resolution under the Lex situs of the property alleged to have been fraudulently conveyed.  An award of punitive damages, on the other hand, depends upon the *object or purpose* of the wrongdoing and on this issue we should look to the "law of the jurisdiction with the strongest interest in the resolution of the particular issue presented."

*Id.* at 259 (quoting *Babcock v. Jackson*, 12 N.Y.2d 473 (1963)); *see also Fed. Housing Fin. Agency v. Ally Fin. Inc.*, 2012 WL 6616061, at *5 (S.D.N.Y. 2012) ("A court must consider 'the *object or purpose* of the wrongdoing,' and give controlling effect to the 'law of the jurisdiction with the strongest interest in the resolution of the particular issue presented.'") (quoting *Powell*).

The court went on to hold that the purpose of the alleged wrong was to "frustrate satisfaction of a New York judgment" and that "it cannot be disputed that New York has the 'strongest interest' in the protection of its judgment creditors."  *Powell*, 19 N.Y.2d at 260.  Thus, rather than apply the law of Puerto Rico (where the alleged conduct took place), the court applied New York law, which, it held, did *not* permit an award of punitive damages under the facts presented.  *See id.*

A similar analysis applies in this case.  The object or purpose of the alleged wrongdoing – even if defendants were guilty of it, which they are not – is clearly purported to be to frustrate Starr's rights under the contract, i.e., to obtain more under the contract than defendants were entitled to.  New York, it seems clear, has the strongest interest in protecting parties to a New York contract from overreaching, bad faith or similar conduct by their contracting

2

counterparties.[2]  And that interest is surely at its zenith here, where the allegedly oppressed party

is itself a New York citizen.  In short, if New York does not deem punitive damages necessary to

protect its *own* citizens, which have chosen to enter into New York contracts, from behavior

designed to frustrate their rights under such contracts, then it is difficult to see how any another

state – here, California – could have a greater interest in such punishment.

### B.  New York has the Greater Interest Generally

Even applying the "greater interest" test applicable to torts more generally, rather than (as

*Powell* instructs) with regard to the "object and purpose" of the wrongdoing, New York law still

is applicable.  As discussed above, New York has a paramount interest in applying its law to

New York contracting parties.  And its expressed policy, in *Rocanova* and its progeny, is that

contracting parties may not seek punitive damages merely to "redress [a] private wrong" if that

wrong "has its genesis in the contractual relationship between the parties."  *New York Univ. v.

Continental Ins. Co.*, 87 N.Y.2d 308, 315-16 (1995).  The Second Circuit has recognized the

important nature of this policy.[3]  *See Carvel Corp. v. Noonan*, 350 F.3d 6, 26 (2d Cir. 2003).

As for California, of course it has an interest in protecting its citizens by deterring

wrongdoing generally.  *See, e.g., Stanley v. Novartis Pharms. Corp.*, 11 F. Supp. 3d 987, 1006

(C.D. Cal. 2014) ("California's punitive damages law advances the state's legitimate interest in

punishing and deterring conduct harmful *to its residents*.") (emphasis added).  But defendants do

not stand accused of wrongdoing aimed at the public *generally* (were that the case there would

---

[2] New York has, by statute, expressly declared its paramount interest in applying its own law to any contracting parties that choose to be governed by it, regardless of their connection to the state.  *See* N.Y. Gen. Oblig. L. § 5-1401; *IRB-Brasil Resseguros, S.A. v. Inepar Inv., S.A.*, 20 N.Y.3d 310, 314 (2012) ("The Legislature desired for parties with multi-jurisdictional contacts to avail themselves of New York law if they so designate in their choice-of-law provisions, in order to eliminate uncertainty and to permit the parties to choose New York's well-developed system of commercial jurisprudence.").

[3] As even California itself recognizes, this type of interest is normally not limited to parochial protection of a state's own companies but rather in providing what it sees as a favorable commercial environment for in-state and out-of-state business alike.  *See McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 91-92 (2010).

3

be no conflict for the Court to resolve).[4]  Defendants are not accused of, say, perpetrating a fraud

on the unsuspecting public or operating their business in an unsafe manner.  The wrongdoing

alleged was only directed – indeed, *could only have been* directed – against defendants'

contracting counterparty, i.e., a sophisticated party in New York who chose to enter into the

relationship and had the ability to (and did) protect itself contractually.  While the Court has

found that California nonetheless has an interest in punishing wrongful behavior in such a

situation – a conclusion with which defendants respectfully disagree, *see infra* Section III –

surely that interest is at its absolute minimum, since it is undisputed that California has a

statutorily-enacted interest in *precluding* punitive damages to the extent an action "aris[es] from

contract."  Cal. Civ. Code § 3294(a).  And that interest is particularly slim given that Starr is a

sophisticated party with no connection with California.  *See Slottow v. American Cas. Co.*, 10

F.3d 1355, 1361-62 (9th Cir. 1993) (punitive damages typically available only where disparate

bargaining power, not in cases of "rough equality of economic power and sophistication").

    In this situation, defendants respectfully submit that reliance upon the prescription that

punitive damages, as "conduct-regulating," should be governed by the law of the "place of the

tort" is unwarranted.  First, this is no more than a rule of thumb intended to describe a common

application of the actual rule, i.e., that the law of the state with the "greatest interest" governs.

*See Babcock*, 12 N.Y.2d at 484 ("Where the issue involves standards of conduct, it is more than

likely that it is the law of the place of the tort which will be controlling but the disposition of

other issues must turn, as does the issue of the standard of conduct itself, on the law of the

jurisdiction which has the strongest interest in the resolution of the particular issue presented.");

*Golden Archer Invs. LLC v. Skynet Fin. Sys.*, 908 F. Supp. 2d 526, 529 (S.D.N.Y. 2012) ("[E]ven

---

[4] As stated *supra* n.1, plaintiff cannot satisfy the public harm requirement under New York law.  Moreover, even if it could, under their newly minted theory the harm would have been to *Michigan* citizens, not California.

where a law is conduct-regulating, we do not blindly follow the *lex loci* rule.") (quotation omitted).  One need look no further than *Powell*, where the law of the "place of the tort" – Puerto Rico – was held by the Court of Appeals not to apply to the question of punitive damages.

Second, this rule of thumb makes greatest sense in cases involving standards with respect to conduct that poses a risk of harm to the public generally – driving an automobile, for example. *See Schultz v. Boy Scouts of Am.*, 65 N.Y.2d 189, 198 (1985) ("[W]hen the conflicting rules involve the appropriate standards of conduct, rules of the road, for example," law of place of tort will usually govern).  But that is not alleged to be the case here.  Citizens of California were not placed at special risk by the alleged conduct of defendants.  Rather, the claim (false as it is) is that defendants directed their conduct at a New York party that freely entered into the contract at issue.  Privileging the physical location of the conduct as necessarily having the greatest interest, particularly over the state that the parties themselves chose to associate with, and whose "well-developed system of commercial jurisprudence" they sought the benefit of, is frankly arbitrary.

Here, moreover, the rules involved are not merely one of *imposing* punitive damages, but the competing New York policy of *limiting* them when the allegedly offending conduct arises out of a contract and does not involve the public.  Characterizing this latter policy as "conduct-regulating" seems an odd description.  New York does not appear by virtue of this policy to be "regulating" any conduct; what it is choosing to do, rather, is to limit the damages available arising from a contract, and to refuse to lend the punitive power of its courts to policing an essentially private wrong.  Indeed, it is well-settled that limitations on damages generally are analyzed in New York under the "postevent remedial" or "loss-allocating" rubric.  *See Schultz*, 65 N.Y.2d at 199; *Golden Archer*, 908 F. Supp. 2d at 538 ("loss-allocating rules" are those "which prohibit, assign, or limit liability after the tort occurs").

Finally, even taken as conduct-regulating rules, as the Court of Appeals has stated, the reason why the "place of the tort" will generally control with respect to such rules is in part due to "the locus jurisdiction's interests in protecting the reasonable expectations of the parties who relied on it to govern their primary conduct." *Schultz*, 65 N.Y.2d at 198; *see also Cooney v. Osgood Machinery, Inc.*, 81 N.Y.2d 66, 77 (1993) ("[O]ur decision to apply Missouri law rests as well on another factor that should, at times, play a role in choice of law: the protection of reasonable expectations."). Here, of course, the parties had every reason to expect that their conduct would be governed by the law that they agreed to apply to the contract, i.e., New York. It is highly implausible, to say the least, that Starr had any reasonable expectation that California law, and in particular its law of punitive damages, would be applicable or that it ordered its affairs around such an expectation. *See Cooney*, 81 N.Y.2d at 77-78. Indeed, the fact that Starr never raised California law (or punitive damages) until less than four months before trial confirms that the parties believed that their relationship was governed by the law of New York.

In situations similar to this, where a tort dispute is closely tied to or arises out of a contract, the courts of this Circuit have found it appropriate, in performing an interest analysis, to give significant weight to the law governing the contract. Thus, in *Ayco Co., L.P. v. Frisch*, 795 F. Supp. 2d 193 (N.D.N.Y. 2011), the court held that, even though the New York contractual choice of law clause did not by itself govern the tort claims pled, "the alleged conduct that gave rise to Plaintiff's tort law claims is the same as that which gave rise to its breach of contract claims. The Court thus considers that it is both efficacious and reasonable for New York law to apply to the tort claims as well." *Id.* at 204; *see also Northwestern Mut. Life Ins. Co. v. Wender*, 940 F. Supp. 62, 66 (S.D.N.Y. 1996) ("Although the cause of action here [insurer bad faith] is

6

one sounding in tort, it arises from an insurance contract. Therefore, standards used to determine the jurisdiction for resolving insurance policy claims should be considered.").

For the foregoing reasons, defendants submit that mechanically applying a "locus of the tort" rule to the question before the Court is contrary to the law of New York.   Moreover, as the Court recognized in its May 7 Opinion, the determination of exactly *where* the "lex loci" is can be difficult in a situation involving purely financial injury alleged to have been inflicted by a party in one jurisdiction against one in another.   Courts in this district, however, have typically held that, at least where, as here, it is claimed that the defendant intentionally directed the injurious conduct at the plaintiff, the state where the plaintiff is located and suffered loss has the greater interest. *See, e.g.*, *Innovative BioDefense, Inc. v. VSP Techs., Inc.*, 2013 WL 3389008, at *6 (S.D.N.Y. 2013) (in fraud case, "paramount concern" is "the place where injury was inflicted, as opposed to the place where the fraudulent act originated.") (collecting cases).[5]

The arrangement between the parties here involved a Claim Account from which defendants, in California, could draw to reimburse for expenses, and which Starr would replenish as necessary by wire transfers from New York.  Plaintiff's allegation is, in effect, that defendants withdrew more from the Claim Account than allowed under the contract, which thereby ultimately injured Starr in New York.  The bank at which the Claim Account is held is in

---

[5] The Second Circuit, in *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 739 F.3d 45 (2d Cir. 2013), rejected what it saw as a rule in New York decisions that place of injury *always* controls. *See id.* at 49-50.  (One of these cases, *Elmaliach v. Bank of China Ltd.*, 110 A.D.3d 192 (1st Dep't 2013), was recently argued before the New York Court of Appeals.)  But *Licci* does not purport to require the opposite rule. *See Benefield v. Pfizer, Inc.*, 2015 WL 1958929, at *5 (S.D.N.Y. May 1, 2015) ("*Licci* eschewed a bright-line rule for conflicts between conduct-regulating rules in the place of the tort and the place of the injury.") (law of Georgia, as place where consumers were injured and to which defendants directed their product, applied over New York, where drugs were manufactured and designed).  Indeed, *Licci*'s holding was premised in part on the "interests in protecting the reasonable expectations of the parties."  739 F.3d at 50-51.  That reasonable expectation is clearly New York.  *Licci*, moreover, involved a claim of *negligent* conduct by a New York party that was not in any sense directed to the place of injury (Israel).

California, but that fact is, defendants submit, purely fortuitous; the account could as easily have been in New York or any other state, and the claim of plaintiff would be precisely the same.[6]

In sum, the parties here chose to have their relationship be governed by New York law, and New York has a clearly expressed interest in enabling parties to access its "well-established system of commercial jurisprudence."  New York also has the greatest interest in regulating that relationship, and in prescribing what can – and cannot – be recovered by one party against the other.  That is particularly so given that it is one of its own citizens that has allegedly been harmed.  If New York finds it proper in this case to limit Starr's recovery to compensatory damages, California surely has no greater interest in seeing that Starr recovers more.

## II.    THE PARTIES' NEW YORK CHOICE OF LAW CLAUSE SHOULD GOVERN

However, there is a simpler route to this result: application of the choice of law clause in the parties' contract.  Defendants are aware that the Court held that "the clause does not apply to Plaintiff's tort claims," May 7 Op. at 5, and with that conclusion, defendants have no quarrel: the clause does not require New York law to be applied to determine whether defendants breached a fiduciary duty or committed conversion.

But that is not precisely the question before the Court.  The question is whether the rule in New York, that contracting parties may not obtain punitive damages for purely private harms arising out of the contract (even if stated in tort), applies in this case.  That rule, which arises by operation of law whenever parties enter into a New York contract, is, defendants submit, applicable to the parties here by virtue of their having chosen to have their "agreement" be "in all respects … governed by and in accordance with" New York law, just as much as if they had specifically placed such a limitation on punitive damages in the contract itself.

---

[6] There is no allegation, for example, that defendants violated California banking regulations or that the presence of the bank in California facilitated or played any role in the alleged wrongdoing.

A strikingly similar situation, dealing with the intersection of tort and contract, arose in *About.com, Inc. v. TargetFirst, Inc.*, 2002 WL 826953 (S.D.N.Y. 2002).  The question for the court was whether to apply New York law, which "does not recognize a claim for fraud where the claim is based on the same factual allegations as a claimant's breach of contract claim," or California law, which (it was claimed) did allow such fraud claims.  *See id.* at *1.  The plaintiff argued that, because its claim was noncontractual, it did not "arise under the Agreement" so as to be covered by the choice of law clause.[7]  The court, however, disagreed, and held that the fraud claim "cannot be said to not arise under the Agreement which memorializes the parties' rights and obligations."  *Id.* at *2.  The court applied New York law and dismissed the claims.

## III.    CALIFORNIA DOES NOT PERMIT PUNITIVES IN THIS CASE

Although the Court ruled in its May 7 Opinion that California law allows punitive damages in this case, in light of the limited ability to brief that issue previously, defendants respectfully ask the Court to reconsider.  First, while the Court suggested that defendants were unable to cite "any relevant precedential authority" in support of their position, defendants did, in their reconsideration motion, cite to *Doyle v. Chief Oil Co.*, 64 Cal. App. 2d 284 (2d Dist. 1944).  There, plaintiffs brought a fraud claim against defendants for falsifying oil production records to underpay royalties; the court held that under Civil Code § 3294, "although the acts of appellant were fraudulent, such acts were related to and affected certain obligations 'arising from contract,' the violation of which resulted in the alleged damage to respondents," and thus punitive damages "cannot be sustained."  *Id.* at 295.  Moreover, the May 7 Opinion itself did not

---

[7] The choice of law clause in *About.com* ("This Agreement will be governed by the laws of the State of New York without giving effect to conflict of law principles," *see* 2002 WL 826953, at *1) was strikingly similar to the one in this case ("This Agreement shall be deemed to be made in, and in all respects shall be interpreted, construed and governed by and in accordance with the laws of the State of New York without regard to its conflicts of law principles.").  If anything the clause here is even broader, requiring governance "in all respects" by New York law.  Similarly, the forum selection clause here (applying to any action "relating to this agreement") is even broader than that in *About.com*, which applied to "any cause of action arising under this Agreement."  *See id.*

cite to any cases directly holding punitive damages available; the question was not actually before the courts in any of the cited decisions and any statements therein are dicta.[8]

Third, the Court held that the question under California law was whether the tort claims are "independent," but the cases it cited state at most that an "independent" tort is a *necessary* condition for punitive damages, not that "independence" is *sufficient*.  Rather, the California courts have held, as in *Doyle*, that § 3294 bars punitives where the tortious acts "related to and affected" contractual obligations, or alternatively, that § 3294 does not bar punitives provided that the tort "incidentally involves a breach of contract."  *See Alberts v. Life Assur. Co. of Boston*, 2014 WL 4099128, at *4 (N.D. Cal. 2014).  Here, the contract is hardly "incidental"; it is, as the Court found, the necessary prerequisite to the tort claims.  Moreover, the Court's prior determination, under New York law, that the tort claims were sufficiently "independent" in the sense of non-duplicative (thus allowing them to proceed) does not answer the question of whether the contract is merely "incidental" under *California* law for purposes of § 3294.

In any case, defendants submit that it is evident from the foregoing that the question of whether punitive damages are available under California law in this case is at best an extremely close one.  The Court may properly take into account that choosing to apply California law to this question will necessarily involve this New York court making a pronouncement of California law that is far from certain, and that this should weigh against the application of that state's law and in favor of the law of New York.

---

[8] *See Frazier v. Metropolitan Life Ins. Co.*, 169 Cal. App. 3d 90, 105-07 (2d Dist. 1985) (punitives were *not* available since plaintiff's claim was in contract); *Harris v. Wachovia Mortg. FSB*, 185 Cal. App. 4th 1018, 1023 (4th Dist. 2010) (no discussion of punitives; tort claim for bad faith dismissed); *Nava v. JP Morgan Chase Bank, N.A.*, 2014 WL 6886071, at *2 (C.D. Cal. 2014) (dismissing bad faith tort claim); *In re Ryan*, 369 B.R. 536, 545-46 (N.D. Cal. 2007) (for purposes of relation back of judgment lien, creditor could have recovered in the underlying action for contract claims as well as tort claims in same suit, provided tort was "independent"), *aff'd*, 310 Fed. App'x 980 (9th Cir. 2009).  Though *Frazier* suggested plaintiff there *could* have recovered punitive damages had the tort limitations period not expired, that is dictum, but in any case *Frazier*, and the cases it cites, are insurance cases, a context that California courts have acknowledged as exceptional.  *See Harris*, 185 Cal. App. 4th at 1023 ("the tort of breach of the covenant of good faith and fair dealing applies only in the context of insurance contracts").

10

Dated: New York, New York
       May 11, 2015

                              SATTERLEE STEPHENS BURKE & BURKE LLP


                         By: */s/ James F. Rittinger*
                                 James F. Rittinger
                                 Glenn C. Edwards
                                 Justin E. Klein
                                 Jennifer Philbrick McArdle
                         230 Park Avenue
                         New York, New York 10169
                         (212) 818-9200
                         *Attorneys for Defendants*

11