```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
STARR INDEMNITY & LIABILITY COMPANY,                              :
                                                                  :
                    Plaintiff,                                    :    14-CV-0463 (JMF)
                                                                  :
        -v-                                                       :    OPINION AND ORDER
                                                                  :
AMERICAN CLAIMS MANAGEMENT, INC. et al.,                          :
                                                                  :
                    Defendants.                                   :
                                                                  :
------------------------------------------------------------------X
```

JESSE M. FURMAN, United States District Judge:

This case, familiarity with which is assumed, arises out of a dispute between Plaintiff Starr Indemnity & Liability Company ("Starr"), an insurance company, and American Claims Management, Inc. ("ACM"), a third-party claims administrator for Starr, about whether ACM and two of its affiliates, Superior Recovery Services, Inc. ("SRS") and Marquee Managed Care Solutions, Inc. ("Marquee"; together with SRS, the "Subsidiaries"; and, collectively, the "Defendants"), improperly charged Starr for certain services that they claimed to have performed on Starr's behalf.  The case went to trial and, on May 26, 2015, after ten days of trial, a jury rendered a verdict in Starr's favor, awarding Starr more than $1.6 million in compensatory damages and $2.75 million in punitive damages.  (Ct. Ex. 5 (Docket No. 138)).  Judgment was entered on June 26, 2015.  Defendants now move for judgment as a matter of law pursuant to Rule 50 of the Federal Rules of Civil Procedure or, in the alternative, a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure.  For the reasons explained below, Defendants' Rule 50 motion is DENIED, but their Rule 59 motion is GRANTED in part and DENIED in part.

**LEGAL STANDARDS**

Rule 50 of the Federal Rules of Civil Procedure "imposes a heavy burden on a movant, who will be awarded judgment as a matter of law only when 'a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.'" *Cash v. Cnty. of Erie,* 654 F.3d 324, 333 (2d Cir. 2011) (quoting Fed. R. Civ. P. 50(a)(1)).  According to the Second Circuit, the "burden is particularly heavy where, as here, the jury has deliberated in the case and actually returned its verdict in favor of the non-movant." *Cash*, 654 F.3d at 333 (internal quotation marks omitted).  In such circumstances, a court may set aside the verdict only if, viewing the evidence in the light most favorable to the non-movant, "there exists such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so overwhelming that reasonable and fair minded persons could not arrive at a verdict against it." *Id.* (internal quotation marks omitted); *see also, e.g.*, *Zellner v. Summerlin,* 494 F.3d 344, 371 (2d Cir. 2007) (stating that a Rule 50 motion may be granted only if the court concludes that "a reasonable juror would have been compelled to accept the view of the moving party" (internal quotation marks omitted)).  Further, if a party failed to move for judgment as a matter of law on the relevant issue before the case was submitted to the jury, the standard for granting a post-verdict motion "is elevated." *ING Glob. v. United Parcel Service Oasis Supply Corp.*, 757 F.3d 92, 97 (2d Cir. 2014); *see also Lore v. City of Syracuse*, 670 F.3d 127, 152-53 (2d Cir. 2012) ("A Rule 50(a) motion requesting judgment as a matter of law on one ground but omitting another is insufficient to preserve a JMOL argument based on the latter.").  In that circumstance, judgment as a matter of law "may not properly be granted by the district court . . . except to prevent manifest injustice.  Manifest

injustice exists where a jury's verdict is wholly without legal support." *ING Glob.*, 757 F.3d at 97 (citation omitted); *accord Pahuta v. Massey-Ferguson, Inc.*, 170 F.3d 125, 129 (2d Cir. 1999); *see also Rothstein v. Carriere,* 373 F.3d 275, 291 (2d Cir. 2004).

The standard for granting a new trial under Rule 59 is less stringent, but still relatively high. *See, e.g., Manley v. AmBase Corp.*, 337 F.3d 237, 244-45 (2d Cir. 2003). Specifically, a court may grant a motion for a new trial where the verdict is against the weight of the evidence, and need not view the evidence in the light most favorable to the nonmoving party; instead, the court may weigh the evidence — including the credibility of witnesses — independently. *See Manley,* 337 F.3d at 244-45. Nevertheless, a "decision is against the weight of the evidence if and only if the verdict is (1) seriously erroneous or (2) a miscarriage of justice." *Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, 417-18 (2d Cir. 2012) (internal quotation marks omitted). And while a judge evaluating a motion for a new trial may weigh witness credibility, he or she must do so "with caution and great restraint, as a judge should rarely disturb a jury's evaluation of a witness's credibility and may not freely substitute his or her assessment of the credibility of witnesses for that of the jury simply because the judge disagrees with the jury." *Id.* at 418 (internal quotation marks and citations omitted). In fact, the Court of Appeals has cautioned that "where . . . a verdict is predicated almost entirely on the jury's assessments of credibility, such a verdict generally should not be disturbed except in an egregious case, to correct a seriously erroneous result, or to prevent a miscarriage of justice." *Id.* at 418-19; *accord ING Glob.*, 757 F.3d at 99; *Metromedia Co. v. Fugazy*, 983 F.2d 350, 363 (2d Cir. 1992). As the Court has explained, if a finding "turned to a large extent on the credibility of the witnesses who testified before the jury, the finding and the verdict which followed are particularly ill-suited to after-the-fact second guessing." *ING Glob.*, 757 F.3d at 99.

**DISCUSSION**

In their motion, Defendants raise a number of arguments that the Court has previously — and repeatedly — rejected, including that New York law applies to Starr's claims for punitive damages (Defs.' Mem. Law Supp. Renewed Mot. Judgment Matter Law Or New Trial (Docket No. 169) ("Defs.' Mem.") 15-16), that Starr cannot recover punitive damages on its tort claims because they "arise from contract" (*id.* 14-15), that Starr's conversion claims are duplicative of its contract claims (*id.* 20-21), and that the Court erred in granting Starr's motion to amend (*id.* 23-25). (*See, e.g.*, Tr. 1103-07 (deciding the choice of law question); Tr. 1096 (finding that the tort claims are independent from the contract claim); Docket No. 108 (making clear that the Court would not consider Judge Cote's ruling on Starr's motion to amend)). Defendants provide no reason why the Court should reconsider its prior rulings on those issues, and the Court declines to do so. Accordingly, it addresses here only Defendants' new arguments: that they are entitled to a new trial on liability with respect to one aspect of Starr's claims (Defs.' Mem. 21-23) and that they are entitled to judgment as a matter of law or a new trial with respect to punitive damages. (*Id.* at 4-11, 16-20).

**A.      Motion for a New Trial on Liability**

The Court begins with Defendants' argument that they are entitled to a new trial on liability. At trial, Starr argued that ACM breached the parties' contract (the "Claims Service Agreement" or "CSA") by making two types of unauthorized charges. The first — which Starr called the "Litigation Savings Charges" and that Defendants referred to as the "Marquee Charges" — involved fees charged by Defendants for reviewing medical bills in cases that were ultimately resolved through litigation. The second — the "MCCA Charges" — involved fees charged by Defendants for their work in connection with reporting catastrophic claims to the

4

Michigan Catastrophic Claims Association ("MCCA").  Defendants do not contest the jury's finding of liability with respect to the first category of charges, but they argue that the jury's finding that the MCCA Charges were not authorized by the CSA was against the weight of the evidence.  They therefore contend that they are entitled to a new trial.  (Defs.' Mem. 21-23).

That argument is without merit.  The CSA authorized ACM to charge Starr for any "cost of recovery (subrogation, contribution, 2d injury fund, and salvage)," as well as "any and all similar such expense reasonably necessary to the administration of an individual claim."  (Am. Compl. (Docket No. 89), Ex. A ("CSA") at 25).  Defendants argue that they introduced evidence that the MCCA charges fell within that definition, including testimony from (1) an expert witness, (2) one of the CSA's drafters, (3) Defendants' employees, and (4) lawyers employed by Starr.  (Defs.' Mem. 21-23).  But while that evidence would have allowed the jury to conclude that the CSA authorized the MCCA charges, it did not compel that finding, as Starr introduced evidence that the CSA did not authorize such charges.  For example, the CSA itself does not mention the MCCA; Starr witnesses testified that "subrogation" has a technical meaning that does not apply to the MCCA (Tr. 251, 360, 975-76); and Starr's expert witness testified that the MCCA should be considered a "reinsurer," not subrogation or a second injury fund.  (Tr. 1019-1023).  At bottom, therefore, Defendants' motion amounts to little more than an argument that the Court should credit their witnesses over Starr's witnesses.  But "matters of choice between competing inferences, the credibility of the witnesses, and the weight of the evidence are within the province of the jury, and [the Court is] not entitled to second-guess the jury's assessments."  *Smith v. Carpenter*, 316 F.3d 178, 188 n.14 (2d Cir. 2003) (internal quotation marks omitted); *see also Raedle*, 670 F.3d at 418 (instructing that, although a district judge may weigh the witnesses' credibility in deciding whether to grant a new trial, "trial judges must exercise their

5

ability to weigh credibility with caution and great restraint, as a judge should rarely disturb a jury's evaluation of a witness's credibility, and may not freely substitute his or her assessment of the credibility of witnesses for that of the jury simply because the judge disagrees with the jury" (internal quotation marks and citations omitted)).  As that is exactly what Defendants ask the Court to do here, their Rule 59 motion with respect to the MCCA charges must be and is denied.[1]

**B.      Punitive Damages**

As noted, Defendants also challenge the jury's award of punitive damages.  Specifically, they argue that new evidence requires a new trial (Defs.' Mem. 9-11); that there was insufficient evidence of malice, fraud, or oppression to support the jury's verdict (*id.* at 4-9); that Starr failed to provide meaningful evidence of Defendants' financial condition (*id.* at 11-14); that the judgment improperly awards "double punitive damages" (*id.* at 19-20); and that the jury's award is excessive.  (*id.* at 16-19).  The Court begins with Defendants' argument that they are entitled to judgment as a matter of law because there is insufficient evidence that they acted with malice, fraud, or oppression, then turns to their argument that Starr failed to introduce sufficient evidence of Defendants' financial condition.  For reasons that will become clear, the Court need not reach Defendants' other arguments.

---

[1] Defendants do not seem to request judgment as a matter of law pursuant to Rule 50 on Starr's claims with respect to the MCCA Charges.  (*See* Defs.' Reply Mem. Law Further Supp. Renewed Mot. J. Matter Law Or New Trial (Docket No. 177) ("Defs.' Reply") 10 ("[D]efendants' motion clearly was, and is, for the court to set aside the verdict and order a new trial . . . .")).  Even if they do, however, Defendants' failure to meet the more lenient standard for a new trial necessarily means that they have not met the standard for judgment as a matter of law.  *See Lewis v. City of New York*, 689 F. Supp. 2d 417, 424 n.6 (E.D.N.Y. 2010).

### 1.     Evidence of Malice, Fraud, or Oppression

Under California law (which the Court held applies to Starr's claims for punitive damages), punitive damages may be imposed "[i]n an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(a).  In this case, Defendants argue that the only possible basis for punitive damages was fraud — defined as "an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury," Cal. Civ. Code. §3294(c)(3) — and that no evidence of fraud was actually introduced.  (Defs.' Mem. 5).  They therefore move for judgment as a matter of law.[2] Because, however, Defendants fail to show that "there exists such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture," *Cash,* 654 F.3d at 333, their motion for judgment as a matter of law on this first ground must fail.

As the Court previously observed, Starr's entitlement to punitive damages is a "close question." (*See* Tr. 1095).  Nevertheless, even assuming *arguendo* that the jury could only have awarded punitive damages based on a finding of fraud — a proposition that Starr vigorously contests (Mem. Law Opp'n Defs.' Renewed Mot. Judgment Matter Law Or New Trial (Docket No. 174) "Pl.'s Mem." 7-8) — Starr introduced sufficient evidence to allow the jury to make such a finding.  Defendants argue that the evidence demonstrates that they genuinely, but wrongly, believed that they were entitled to make the disputed charges and that they never

---

[2]     Defendants also move for a new trial on this ground.  (Defs.' Mem. 4).  But given the Court's ruling that Defendants are entitled to a new trial on punitive damages on another ground, the Court need not — and does not — reach that question.

7

intentionally concealed the charges from Starr. (Defs.' Mem. 7-9). They emphasize, for example, that "Starr had full access to the claims account, the ACM claims system, the invoices, and other records; that these record showed all payments made; and that there was no evidence of any effort by defendants to interfere with or prevent that access." (Defs.' Mem. 7 (citing Tr. 639-51, 653)). But the fact that all of the charges were both listed in invoices and contained in the ACM system to which Starr had access hardly means that Defendants did not conceal the charges from Starr; instead, given the arguably partial nature of the ACM's "disclosures" and the volume of data in the records to which Starr had access, the jury could have concluded (and clearly did conclude) that Defendants attempted to hide the disputed charges in plain sight.

Additionally, the jury was entitled to infer from the circumstances surrounding implementation of the charges at issue that Defendants attempted to conceal the charges from Starr in order to recover money to which they knew they were not entitled. ACM began making the disputed charges, which had never previously been made, after the program for which ACM was a third-party administrator went into "runoff," meaning that ACM would no longer be earning premiums from the program. (Tr. 759-60, 914-15). Moreover, ACM not only added the charges going forward, but it also engaged in a "catch up project," whereby it recovered fees retroactively. (Tr. 818-24). ACM never disclosed to Starr that it was making the new charges (*see, e.g.*, Tr. 331-33, 867-68), even though Mac Armstrong, the Chief Financial Officer and Chief Operating Officer of ACM's parent company, testified that he would have expected ACM to call Starr's attention to any new charges being made (Ct. Ex. 7 (Docket No. 180, Ex. A), Armstrong Tr. 5-6). In fact, when Starr asked about charges that it did not understand appearing on its bill with regard to a particular claim (the "Suleiman Claim"), ACM still did not disclose that it had begun making new kinds of charges; instead, it simply told Starr that the charges were

8

for "medical bill review" and that "[f]rom what [ACM] understand[s], this is the standard way bill review companies work" (Tr. 870-75; Pls.' Exs. 160, 161) — an answer that the jury could easily have concluded was intended to conceal the true nature and purpose of the charges.

Starr also introduced evidence that at least one category of charges, the category that Starr called the "Litigation Savings Charges" and that ACM referred to as the "Marquee Charges," did not reflect any work actually performed by Defendants. (Ct. Ex. 7, Dean Tr. 3-5; *see also* Tr. 869 ("I spoke to defense, and he stated case settled with facilitation of a facilitated settlement. Marquee was not involved.")). At the same time, Defendants experienced a significant increase in revenue from these new charges. (*See* Pl.'s Ex. 122; Tr. 347-48). Based on this evidence, Starr argued that "ACM, using its affiliates . . . , intentionally, wrongfully, and with clear intent to hide from Starr, took money out of [Starr's] trust claim account." (Tr. 1301). Because "a reasonable juror would [not] have been compelled" to find otherwise, *Zellner*, 494 F.3d at 371, judgment as a matter of law is not warranted on this basis.

### 2. Evidence of Defendants' Financial Condition

Next, Defendants argue that Starr failed to introduce sufficient evidence of their financial condition to justify punitive damages. (Defs.' Mem. 11-14). Under California law, "an award of punitive damages cannot be sustained . . . unless the trial record contains meaningful evidence of the defendant's financial condition," and "[i]t is the plaintiff's obligation to ensure that this requirement is satisfied." *Soto v. BorgWarner Morse TEC Inc.*, 191 Cal. Rptr. 3d 263, 283 (Cal. App. 2 Dist. 2015) (quoting *Adams v. Murakami*, 813 P.2d 1348, 1357 (Cal. 1991)). Here, Defendants argue that Starr introduced no evidence of their net worth or liabilities and that it has therefore failed to meet its burden. Accordingly, they contend, they are entitled to judgment as a matter of law pursuant to Rule 50(b).

Significantly, Defendants did not move for judgment as a matter of law on that ground prior to the submission of the case to the jury. (*See* Tr. 1084-87, 1204-07; *see also* Defs.' Reply 7 n.14). Defendants argue in a footnote in their reply that the Ninth Circuit has held that "a defendant [does] not need to make a Rule 50(a) motion with respect to evidence of financial condition in order to make a Rule 50(b) motion." (Defs.' Reply 7 n.14 (citing *Freund v. Nycomed Amersham*, 347 F.3d 752, 763 n.11 (9th Cir. 2003)). In that case, however, the Ninth Circuit held that no Rule 50(a) motion was necessary where a defendant argues that an award is *excessive* in light of the defendant's financial condition, as "the excessiveness of the *amount* of the jury's award of punitive damages cannot be known prior to verdict." *Freund*, 347 F.3d at 763 n.11. Further, the Ninth Circuit expressly contrasted an argument concerning excessiveness with an argument concerning a deficiency of evidence, which "should be apparent at the close of evidence, and should be the subject of a pre-verdict Rule 50(a) motion." *Id.* As Defendants here challenge the sufficiency of the evidence, not the excessiveness of the verdict, *Freund* (which is not binding on this Court in any event) does not help them. Accordingly, they can prevail on their motion for judgment as a matter of law only if they can show "manifest injustice" — that is, that the "jury's verdict is wholly without legal support." *ING Glob.*, 757 F.3d at 97; *see, e.g.*, *Rothstein*, 373 F.3d at 291. Although what constitutes manifest injustice varies depending on the case, "a defendant may not merely argue that the procedural bar should be waived because they should win on the underlying motion." *Zhiwen Chen v. Cty. of Suffolk*, 927 F. Supp. 2d 58, 64 (E.D.N.Y. 2013) (internal quotation marks omitted).

Defendants fail to satisfy that standard. Courts in the Second Circuit have recognized that manifest injustice exists "where the nonmoving party 'did not (*and could not*) present evidence to sustain a verdict' . . . but not where, 'had the moving party raised the issue at trial, it

10

may be that the nonmoving party would have been able to present additional evidence." *MacDermid Printing Sols., LLC v. Cortron Corp.*, No. 08-CV-1649 (MPS), 2015 WL 251527, at *3 (D. Conn. Jan. 20, 2015) (quoting *Doctor's Assocs., Inc. v. Weible*, 92 F.3d 108, 114 (2d Cir. 1996), and *Krisch v. Fleet St., Ltd.*, 148 F.3d 149, 165 (2d Cir. 1998)).  The evidentiary deficiency that Defendants allege here is precisely the type that, had Defendants made a Rule 50(a) motion on point prior to submission of the case to the jury, Starr may have been able to cure.  Accordingly, Defendants' motion for judgment as a matter of law on the ground that Starr failed to introduce evidence of their financial condition must be and is denied.  *See, e.g.*, *Kirsch*, 148 F.3d at 164-65.

In the Court's judgment, however, the lack of evidence concerning Defendants' financial condition does warrant a new trial with respect to punitive damages, as the "failure to make a [Rule 50(a)] motion . . . at the close of evidence has no adverse affect on [a] motion for a new trial."  *Giles v. Rhodes*, 171 F. Supp. 2d 220, 224-25 (S.D.N.Y. 2001); *see also Bracey v. Bd. of Educ. of Bridgeport*, 368 F.3d 108, 117, 119 (2d Cir. 2004) (granting a motion for a new trial after denying a motion for judgment as a matter of law pursuant to Rule 50(b) because no motion pursuant to Rule 50(a) had been filed).[3]  In arguing otherwise, Starr contends that there was

---

[3]     Defendants did not explicitly request a new trial on this ground until they filed their reply.  (*Compare* Defs' Mem. 11-14, *with* Defs.' Reply 9).  Defendants styled their motion, however, as one for "judgment as a matter of law and additionally, or, in the alternative, a new trial."  (Docket No. 168; *see also* Defs.' Mem. 25 (requesting the same)).  The Court therefore construes Defendants' motion for a new trial as applying to their argument that Starr failed to introduce meaningful evidence of their financial condition.  And even if Defendants had not requested a new trial on that ground, Rule 59(d) allows a Court to grant a "timely motion for a new trial for a reason not stated in the [Defendants' Rule 59] motion" after "giving the parties notice and an opportunity to be heard." Fed. R. Civ. P. 59(d).  Here, Starr was certainly on notice of the issue, and had ample opportunity to present all of its arguments with respect to it.

In any event, for the same reason that the lack of meaningful financial evidence requires a new trial in and of itself, the lack of evidence of Defendants' financial condition also means that the award of punitive damages was excessive.  *See Delegat's Wine Estate Ltd. v. Am. Wine*

11

sufficient evidence of the Defendants' financial conditions.  Specifically, as to ACM, Starr elicited testimony from Scott Marshall, ACM's Chief Executive Officer, that ACM's annual revenue is between $37 and $38 million, that the company is doing "okay," and that it is a "single-digit profit business" (that is, that its profits amount to somewhere between one and nine percent of revenue).  (Tr. 378-79).  Starr also introduced a chart labeled "Consolidated PCP: American Claims Management (PC 597 and 618)," with entries for "core operating profit" and "core revenue" for various programs, such as "personal auto" and "personal property."  (Pls. Ex. 173).  Starr introduced no testimony concerning the finances of the Subsidiaries, but another chart, labeled "P&C PCP Projection Analysis (As of 9-17-14)," purports to list the 2014 and 2015 "Proj. Rev." and "Proj. NI" for both entities.  (*See* Pls.' Ex. 172).[4]

That evidence does not cut it.  As an initial matter, the two charts are entitled to little, if any weight, as their significance was never explained to the jury.  There was no testimony, for

---

*Distribs., Inc*., No. C10-2215 (BZ), 2012 WL 1925664, at *1-2 (N.D. Cal. 2012) (finding an award of punitive damages to be excessive "given the dearth of evidence at trial of [the defendant's] financial condition" where the only evidence introduced was that of the defendant's income and that some of his personal expenses were reimbursed, and ordering remittitur).  Thus, in the alternative, the Court can grant a new trial on the ground that, in light of the lack of evidence of Defendants' financial condition, the award is excessive.  *See Capitol Records, Inc. v. MP3tunes, LLC*, 48 F. Supp. 3d 703, 726 (S.D.N.Y. 2014) ("If a district court finds that a verdict is excessive, it may order a new trial, a new trial limited to damages, or, under the practice of remittitur, may condition a denial of a motion for a new trial on the plaintiff's accepting damages in a reduced amount." (quoting *Lee v. Edwards*, 101 F.3d 805, 808 (2d Cir. 1996)).

[4]  Starr also points to a chart admitted into evidence containing figures for the Subsidiaries' incomes for the first five months of 2013 and projections through the end of that year.  (Pls.' Ex. 149; *see also* Tr. 344-48).  But a punitive damages award must be "based on the defendant's financial condition *at the time of trial*."  *Kelly v. Haag*, 52 Cal. Rptr. 3d 126, 128 (Cal. App. 4 Dist. 2006) (emphasis added); *see also, e.g.*, *Rufo v. Simpson*, 103 Cal. Rptr. 2d 492, 526 (Cal. App. 2 Dist. 2001) (noting that a plaintiff must demonstrate the defendant's financial condition at the time of trial, not the time of injury); *Washington v. Farlice*, 2 Cal. Rptr. 2d 607, 614 (Cal. App. 2 Dist. 1991) (finding that the trial court should have considered the defendant's financial condition at the time of the re-trial, not at the time of the original trial).  Accordingly, the Subsidiaries' financial condition in 2013 is irrelevant to the analysis.

example, about how the charts were created or that they accurately reflected the companies' incomes and profits. (Tr. 375-78). More generally, although there is no "rigid standard for measuring a defendant's ability to pay," California courts have largely recognized that "[i]n most cases, evidence of earnings or profit alone are not sufficient without examining the liabilities side of the balance sheet." *Soto*, 2015 WL 4694071, at *15 (internal quotation marks omitted) (citing cases); *see, e.g.*, *Baxter v. Peterson*, 58 Cal. Rptr. 3d 686, 691-92 (Cal. App. 2d Dist. 2007) ("[T]here should be some evidence of the defendant's actual wealth. Normally, evidence of liabilities should accompany evidence of assets, and evidence of expenses should accompany evidence of income."); *Kenly v. Ukegawa*, 19 Cal. Rptr. 2d 771, 776-77 (Cal. App. 4th Dist. 1993) ("An award based solely on the alleged 'profit' gained by the defendant, in the absence of evidence of net worth, raises the potential of its crippling or destroying the defendant, focusing as it does solely on the assets side of the balance sheet *without examining the liabilities side of the balance sheet*."). Here, that is — at most — all that Starr offered. To the extent the jury could even understand them, the charts included no information concerning the companies' liabilities and expenses. And Marshall's testimony was limited to ACM's income and a vague estimation of profit; he did not address even that much with respect to the Subsidiaries.[5] Put simply, there was no evidence whatsoever of Defendants' liabilities, expenses, or net worth.

---

[5] Starr argues that evidence of ACM's income can used to determine the Subsidiaries' financial condition because "(1) ACM is a named defendant, (2) ACM is the parent of [the Subsidiaries], (3) Marshall was the CEO of ACM and the President of [the Subsidiaries], and (4) the jury could have concluded that Marshall acted with fraud, malice, or oppression." (Pl.'s Mem. 13 (internal quotation marks omitted)). But even if that were the case, Starr introduced no evidence of the Subsidiaries' liabilities and expenses. Moreover, under California law, a parent company's financial information, without more, is generally not enough to sustain a parties' burden with respect to a subsidiary. *See Tomaselli v. Transam. Ins. Co.*, 25 Cal. App. 4th 1269, 1282-84 (Cal. App. 4th Dist. 1994). The only case that Starr cites to the contrary — *Freund*, 347 F.3d at 763-64 — involved an award of punitive damages imposed jointly on the parent company

Without evidence of Defendants' liabilities, expenses, and net worth, there was no way for "the jury to make an intelligent assessment of [Defendants'] ability to pay a punitive damages award." *Soto*, 2015 WL 4694071, at * 17; *see, e.g.*, *Lara v. Cadag*, 16 Cal. Rptr. 2d 811, 812-13 (Cal. App. 2 Dist. 1993) ("[E]vidence of a defendant's income, standing alone, is wholly inadequate. . . . If [the defendant] has assets worth millions of dollars and no liabilities, the fact that $70,000 is about three-fourth's of one year's income is a meaningless abstraction. Conversely, if he has liabilities exceeding assets and the award will force him into bankruptcy, $70,000 is excessive." (internal citations omitted)). Nor can this Court make the required determination of whether the punitive damages award is excessive in light of Defendants' ability to pay. *See, e.g.*, *Adams v. Murakami*, 54 Cal. 3d 105, 109-11 (1991) (holding that plaintiffs must present meaningful evidence of a defendant's financial condition in part because courts must review punitive damages awards for excessiveness, and an "award can be so disproportionate to the defendant's ability to pay that the award is excessive *for that reason alone*"); *see also Lara*, 16 Cal. Rptr. 2d at 812-13. In light of those inabilities, the Court is compelled to conclude that allowing the punitive damages award to stand would result in a "miscarriage of justice." *Stampf v. Long Island R. Co.*, 761 F.3d 192, 202 (2d Cir. 2014) (internal quotation mark omitted).

*Green v. Laibco*, 121 Cal. Rptr. 3d 415 (Cal. App. 2d Dist. 2011), upon which Starr relies heavily (Pl.'s Mem. 14-16), does not call for a different result. In *Green*, the Court held that evidence of the defendant's profit and its positive net worth constituted "meaningful evidence of the defendant's financial condition." *Id.* at 424 (quoting *Adams*, 54 Cal. 3d at 109). The Court

---

and the subsidiary. (*See* No. 99-CV-2202 (IEG) (POR) (S.D. Cal.), Docket No. 110). As the jury here made separate awards against each Defendant, *Freund* does not apply.

14

reached that conclusion, however, because any deficiency was the defendant's fault, as the defendant's chief executive officer "purported to be both ignorant of his company's financial condition and unable to read its financial statements." *Id.*; *see also id.* at 425 ("The notion that the jury did not have necessary information about defendant's net worth because plaintiff did not move defendant's financial statements into evidence — statements which defendant's own CEO could not read — is the height of absurdity.  The jury did not have information about defendant's net worth because defendant's CEO engaged in stonewalling, pure and simple, from beginning to end.").  Here, by contrast, there is no indication that Defendants obstructed Starr's ability to obtain evidence of their financial condition.  Further, the *Green* Court had more evidence than that available here: In addition to the profit statements, there was testimony that the company had a positive net worth.  Here, while Marshall did testify that ACM was doing "okay," it is unclear from the transcript what exactly he meant by that.  (*See* Tr. 378 ("Q: And in terms of ACM's financial performance, Mr. Marshall, ACM is doing okay, right? A: It's a single-digit profit business, but yes, it's doing okay.")).  Accordingly, *Green* does not alter the Court's conclusion that Defendants are entitled to a new trial with respect to punitive damages.

## CONCLUSION

For the reasons stated above, Defendant's motion for judgment as a matter of law is DENIED.  Defendants' motion for a new trial is DENIED in part and GRANTED in part, and the judgment with respect to punitive damages is vacated pending a new trial on that issue.[6]

---

[6]    As noted, in light of the Court's ruling, it need not — and does not — address Defendants' arguments that they are also entitled to a new trial or judgment as a matter of law with respect to punitive damages because new evidence has come to light, because the judgment improperly awards "double punitive damages," or because the punitive damages award is excessive as a matter of Due Process and in light of the evidence of their financial condition that was admitted at trial.  (*See* Defs.' Mem. 9-11, 16-20).  These arguments, however, are not without weight.  First, as the Court noted at trial (Tr. 726), Starr's arguments for punitive

The parties shall immediately advise the Court by joint letter if they are interested in a referral to the assigned Magistrate Judge for purposes of settlement. Regardless, within **thirty days** of this Opinion and Order, the parties shall submit to the Court for its approval a Joint Pretrial Order prepared in accordance with Federal Rule of Civil Procedure 26(a)(3) and the Court's Individual Rules and Practices. The parties should follow Paragraph 5 of the Court's Individual Rules and Practices, which identifies submissions that must be made at or before the time of the Joint Pretrial Order, including any motions *in limine*. At or before the same date, the parties shall also file joint requests to charge, joint proposed verdict forms, and joint proposed *voir dire* questions in accordance with the Court's Individual Rules and Practices. Jury instructions may not be submitted after the Joint Pretrial Order due date, unless they meet the standard of Federal Rule of Civil Procedure 51(a)(2)(A). The parties shall be ready for trial approximately **two weeks** after the Joint Pretrial Order is filed.

The Clerk of Court is directed to terminate Docket No. 168.

SO ORDERED.

Date: September 17, 2015
New York, New York

_____
JESSE M. FURMAN
United States District Judge

---

damages were arguably undermined by the fact that it continues to work with Defendants; the allegedly new evidence reinforces the point by tending to rebut Starr's contention that it has been trying to change third-party administrators. Second, although Starr presented sufficient evidence of malice, fraud, or oppression to defeat Defendants' motion for judgment as a matter of law, a reasonable jury could certainly have come out the other way. Third, this is a commercial dispute, and the harm to Starr was purely economic. *See State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003). Fourth, what little evidence the Court has of Defendants' financial condition suggests that the award may well exceed the level necessary to deter future misconduct by them. And fifth, putting aside whether the jury's punitive damages award was sufficiently ambiguous to be reduced (and the fact that Defendants arguably waived any such argument (Pl.'s June 17, 2015 Ltr. (Docket No. 165) 1-2)), the Court is inclined to agree with Defendants that the jury intended to award only half of what it appears to have awarded in punitive damages. (Def.'s June 11, 2015 Ltr. (Docket No. 163) 1-2).